Good morning, your honors. May it please the court, my name is Rebecca Huffstadter and I represent the appellant Jose Herman Santos. If I may, I'd like to reserve two minutes of my ten minutes for rebuttal. Okay. Appellant Jose Herman Santos is a lawful permanent resident who has been detained at a county jail for two years, five months, and two weeks while he waits for a final resolution in his deportation case. Where is that now? I thought that was DIA, is that right? Where is it being in right now? It has been remanded back to the immigration judge and the application for cancellation of removal is pending and scheduled for a merits hearing. Is that hearing on May 26th? That's correct, your honor. We'd appreciate it if you could follow up with the court right after that hearing to let us know if there's an oral ruling or what you know about the outcome or timing right after that. I will, your honor. And your honors, over the course of these past two and a half years, as evidenced by the remand from the Board of Immigration Appeals back to the immigration judge, the government doggedly pursued Mr. Herman Santos' removal based on a legal theory that it abruptly declined to defend in front of this court and in front of the BIA on remand. Yet during these two and a half years, no judge has ever considered whether it is necessary for the government to continue to detain Mr. Herman Santos. Well, the issue is whether or not he has a right to have that determination made. Correct, your honor. The due process clause of the Constitution gives him a right at this point after two and a half years to an individualized determination of whether his continued detention is necessary. And which of those cases did that competition? Diop and Chavez-Alvarez, your honor. Those cases remain good law with regard to their constitutional holdings, and they've held that a familiar due process balancing test applies to determine whether civil immigration detention without a bond hearing has become unconstitutional. Ms. Hustadter, Judge Bevis, could I ask you, you analogize this case, 1226C bond hearings, to hearings for aliens detained under 1231A6, but a lot of these cases came up in the context of A6 where the detention might be indefinite. And this is a case where, yes, detention has gotten to be long, but there's a natural end point once the cancellation removal proceedings are done. Either he gets removed or he gets released into the country. We're not going to have a stateless person just trapped in limbo here. So why should we be analogizing the two and relying heavily on the 1231A6 cases? Well, your honor, this court's prior decisions in Diop and Chavez-Alvarez and Leslie were 1226C cases, not 1231A6 cases. And those cases held that even though removal proceedings are ongoing, the court should do a familiar due process balancing and balance the liberty interest against the government's interest. And here, where the length of time has become very extended, the liberty interest is strong enough that it outweighs the government's interest in detention based on presumptions alone and requires a more individualized process. And those decisions rely directly on the Constitution and thus remain good law despite Jennings. For example, Diop, and again, this is a 1226C case, held that when detention becomes unreasonable, the due process clause demands a hearing. It was kind of confusing because both of those cases, you're right, they're 1226C cases, but both of them relied on the – they made a due process hearing ruling or suggestion, but they also relied on constitutional avoidance. So was that dictum or an alternative holding? If they're construing the statute to avoid constitutional concerns, it's a little weird to say that there's actually a constitutional holding in there too. Your Honor, in Diop, the implicit limitation that the court read into the statute was coextensive with the limitation that the due process clause itself imposes because the court held that the statute authorizes only detention that's reasonable and therefore constitutional. So, for example, in Diop, the court said the statute authorizes detention for a reasonable period of time. After that, the due process clause of the Fifth Amendment to the Constitution requires that the government establish that continued detention is necessary. So the constitutional portion of the analysis was not dictum because it was necessary in Mr. Diop's case to resolve the case. The court held that Mr. Diop's case was unconstitutional and therefore was not authorized by the statute. The statute drops off exactly at the point at which the Constitution requires it to. So the constitutional holding was holding that survived Jennings. Your Honor, did Chavez mention constitutional avoidance? It did not discuss constitutional avoidance at any length. It did cite Diop and both the constitutional and statutory holdings of Diop, but the analysis in Chavez-Alvarez is devoted to discussing how courts should determine when the tipping point between the liberty interest and being free from arbitrary detention outweighs the government interest in any individual case, and that's a very classic due process, Matthews v. Eldridge-style balancing test that was apparently based on that court's analysis of the due process clause, not of the statute. And, Your Honor, that's why the factors that Chavez-Alvarez employed to determine when that tipping point occurred, when detention becomes unconstitutional, should continue to provide guidance to district courts in resolving these cases. But the district court in this case failed to apply those factors, and that's why it erroneously upheld the constitutionality of Mr. Herman Santos' detention. Let's say we agree with you. You say that the standard which the bond hearing, the government has to bear, the burden of proof has to bear it by current convincing evidence. But let me come back to my initial question, which was, this is a 1226C case, and you're relying there on Guerrero-Sanchez, which is a 1231A6 case. Again, given that this is not a case of indefinite detention, why view this through the same lens and require the same heightened burden of proof? Two minutes. Guerrero-Sanchez is relevant in this context because it held that where the constitution requires a bond hearing, the bond hearing should involve a heightened burden of proof. Yes, but let's talk specifically about is the fact that there's a natural ending point in 1226C a basis for distinguishing Guerrero-Sanchez? It didn't have occasion to talk about 1226C. Not with regard to the burden of proof, Your Honor, because in both cases, the reason the bond hearing is being ordered is because there has been a finding that the liberty interest at stake now outweighs the government's interest in detention-based solely on presumptions, not on an individualized hearing. So in that sense, Guerrero-Sanchez just reflects the Supreme Court's decisions in other cases, like Addington, Cooper v. Oklahoma, Santofi v. Kramer, that all held that where the deprivation at issue is something more than money is a serious interest like liberty, and especially a prolonged deprivation of liberty that's at stake here, then the procedural safeguards need to be sufficiently robust to prevent against erroneous deprivation. And, Your Honor, there's also practical reasons for imposing this heightened burden of proof. First, after two and a half years, the government has ample evidence, ample access to evidence about Mr. Germán Santos in order to meet its burden of showing if he truly is a danger or a flight risk, it should be able to show that at a hearing. And on the other side, because Mr. Germán Santos has now been detained for two and a half years, he does not have access to the type of evidence that someone at the outset of detention would have. For example, he can't show that he's lived at the same address, that he's had a consistent work history, that he has avoided future arrests for all of this time. So the fact of the prolonged detention is what requires the heightened burden of proof on the government. And, you know, finally, Your Honors, Chavez-Alvarez emphasized the conditions of confinement as part of the calculus for determining when the liberty interest at stake outweighs the government's interest in continued detention. And that's a weighty factor here. Mr. Germán Santos had never spent more than a night in jail before he was detained by ICE. He was sentenced to probation on the conviction that underlies his deportation. And now he's in a county jail for two and a half years in conditions that are indistinguishable from criminal custody. And those conditions are particularly heavy at this time where the facility where he's detained is on lockdown and he's in his cell 23 hours a day. So that burden on Mr. Germán Santos' liberty is extraordinary and makes it particularly clear that his detention without volunteering has become unconstitutional. And a hearing where the government bears the burden of proof is required. Any other questions? Mr. Zegar? No, I'm fine. Nothing for me. Okay. Good morning, Your Honors. May it please the Court, this is Cecil Perez for Amici ACLU, ACLU of New Jersey and ACLU of Pennsylvania. Your Honors, the misapplication of Dieppe and Chavez-Alvarez is not just a problem in Mr. Germán Santos' case, but it's a systemic problem that district courts in this circuit have repeated now for over eight years since Dieppe. Due to these repeated failures, Amici urged the Court to do three things. One, reaffirm the constitutional holding of Dieppe and Chavez-Alvarez. Two, reaffirm the Chavez-Alvarez factors. And three, direct the government to implement these constitutional holdings. Since Counsel for Mr. Germán Santos has focused on the first of these arguments, we will focus on arguments two and three. And a special point here, Your Honors, just to set the table for the reaffirmation of the Chavez-Alvarez factors, I want to point out that as in Mr. Germán Santos' case, a lot of these cases and a lot of these habeases are brought co-stay. Like in this case, Ms. Huffstetter did not become involved in the case until after the district court had already decided the case. And so it creates a problem in terms of the briefing that district court judges receive in the case and the kind of instruction and specificity that we urge this court to order in reaffirming Chavez-Alvarez. In addition, and as I'll point out, there's a number of factors that even though Chavez-Alvarez lays them out, district courts have repeatedly failed to properly apply. And especially since Janney, the factors have become diluted and distorted by the district courts. And I'll point to three that are particularly notable, Your Honors. Number one is the issue of the six to 12-month presumption. Chavez-Alvarez makes clear that sometimes between six to 12 months, detention becomes presumptively unreasonable. And yet, despite the clear language in Chavez-Alvarez, district courts have repeatedly refused to hold detention unreasonable until after the one-year mark. And in fact, even courts that have ultimately found detention unreasonable have observed that it is not until after the one-year mark that it becomes unreasonable. Are you suggesting that if you prevail, we'll reestablish a hard and fast cutoff for unpaid detention? No, Your Honor. All we are asking for here is a reaffirmation of the holding in Chavez-Alvarez that sometime between the six months to a year, detention becomes presumptively unreasonable. The cutoff point is 12 months. I'm sorry, Your Honor. If we do that, we're establishing a cutoff point. You're saying somewhere between six months and 12 months. But if you take the outer limit of that, the 12 months, you're then asking us to establish a hard and fast cutoff point for detention of 12 months. And I'm not sure that we can do that. Not quite, Your Honor. The ask is that as early as the six months and very likely by the 12 months, detention has become unreasonable. But all that's required at that point is an individualized analysis of whether the detention is unreasonable, not a bright-line rule. And this is exactly what Chavez-Alvarez says. The problem with the district court, Your Honor, is that they have said that it is not until after the one-year mark, and in some cases until well after the one-year mark, that we may even consider this constitutional analysis. And that just directly contravenes the Chavez-Alvarez language. Wait a second. As early as the six months. Ms. Perez, I don't understand how that question is presented here, given that we have a two-year, five-month detention. That would be dictum for us to be speaking to it. I mean, we can certainly speak to the way the district court in this case addresses this length of detention. But this length of detention is well over a year, so I don't understand how the issue of what to do with under-one-year detentions is before us. Justice, we concede that the issue is not properly before the court. But we can't speak to it. Our ask as amicus here is that the court clarify the Chavez-Alvarez factors that are already law in this circuit. And, again, with the frame in mind that this kind of reaffirmation comes in a setting where individuals are litigating these cases pro se and district courts are routinely failing to apply the law in this circuit. If I may, the next factor here, and it's actually directly on point from the lower court, is the lack of evaluating the foreseeability of future detention. This is the second Chavez-Alvarez factor. The analysis in the lower court is not just how long has the person been detained, but is it foreseeable that this person continues to be detained as they litigate their case. And district courts have routinely just completely ignored this factor in their individualized analysis. And then the final factor that, again, was at issue here as well is the actions of the party. The Chavez-Alvarez held that so long as the individual is litigating in good faith and has a bona fide claim, the court cannot punish the individual for doing so, and detention can become unreasonable. And yet district courts have distorted this factor in two important ways. One, district courts have routinely said that if the government has acted reasonably, then detention is reasonable. And that misses the question. And it's, in fact, directly contrary to Chavez-Alvarez and Diaz. Detention may become unreasonable even where the government has acted reasonably. As Chavez-Alvarez said, the most important factor here is whether the individual litigating the case has presented a real legal issue. And so long as that's been the case, once detention becomes prolonged, then it becomes unreasonable. The second related error here is district courts have often assumed that for any extension in litigating a bona fide claim, any extension asked by the individual litigating the case goes against finding that detention is unreasonable. And, again, this presumes that any extension is done in some sort of bad faith effort in order to extend or prolong the detention. Mr. Perez, Judge Phoebus, which of these is presented here? In this case, we've got a two-week extension, so I'm not sure that even matters. The actions of the parties, yes, I grant that modest extension is on the table, but I'm not sure what you would say on these facts the district court did wrong under Chavez-Alvarez apart from, you know, taking seriously the 12-month outer limit. You say they also ignored the foreseeability, but do you want to give us any specifics on what we would tie to in this record? In terms of foreseeability, Your Honor, the analysis would have been that by the eight months when Mr. Chavez-Alvarez was appealing the case, it was foreseeable for the court that this detention would have been prolonged and that he was litigating in that particular moment a good faith bona fide case. And as the record since then obviously shows, it is a good faith and bona fide case. In terms of the error concerning the assumption of the extension, you're right, Your Honor, it's not squarely presented as that, but it ties to this actions of the party factor that, again, not as squarely in this case, but in the district court's decision it's routinely misunderstood to be the inquiry, the legal inquiry, to be not whether this is a good faith case or a good faith claim that's being presented, but rather whether an extension has been requested. And that becomes sort of a presumption of an automatic bad faith. In fact, the appeal becomes a presumption. Is that what you're saying? I'm sorry, Your Honor. I didn't quite catch that. Are you saying the fact of taking the appeal becomes an automatic presumption? Not so much the fact of taking the appeal, but the fact of asking for any extension. So, for example, to obtain counsel is automatically taken as a bad faith presumption to extend the litigation and then ask for a reasonableness hearing. Okay. So, yes, Your Honor, I think we're saying similar things, yes. So, if I may, the last point on this is asking the court to direct the government here to implement the constitutional holdings in Diop and Chavez-Alvarez. So, Diop was decided over eight years ago, and there's been no discernible change in government practice. And as we know in our brief, even in cases where the government conceded that mandatory detention was unreasonable, the government has still litigated these cases. This court has said what the Constitution requires, and the government has an obligation to follow the law and follow what the Constitution requires. And yet here the government has not changed its practice at all. I'll contrast that, Your Honor, for example, with Vitus and Guerrero-Sanchez, where conceivably different context, statutory context, and a bright-line rule, but the government has established procedures to, at a certain point in time, review whether or not the detention is unconstitutional or have an immigration judge review the bond hearing. And I'll point, Your Honors, to Sobel here, the 11th Circuit case, making a very similar observation that the government in these cases does not have to wait for detention to become unconstitutional, and that takes the 12-month window. The government can proactively review these cases and refer them to an immigration judge. And I'll note, as noted in the brief of the amicus practitioners, we're dealing with a fairly limited universe here of about 200 to 300 estimated cases. So it's not unmanageable at all, and yet these are 200 to 300 people that until they go into court with a often pro se habeas, they have no way of vindicating their constitutional rights. Not only... Your Honor, you reserved a U.S. for five minutes. My time is not running, but I think you're required to open. Why don't you just take literally a minute and sum up? I'll wrap up, Your Honor. Thank you. Just a last point here. The way the system... The government's current lack of systems really creates an unnecessary burden here in the lower courts. As exemplified, again, in the practitioners' brief, prolonging detention well past the year as... Or prolonging detention even after habeas has been filed for over a year as the district court considers these cases. So to conclude, I urge the court to reverse the district court decision, reaffirm the adverse factors, and direct the government to implement its constitutional obligations. Thank you, Your Honor. Thank you. Ms. Wilson? Thank you. May it please the Court. Sarah Wilson on behalf of the appellee. The district court correctly denied the petition here and concluded that the petitioner was lawfully subject to under Section 122060. And critical to the district court's decision was its correct observation that these presumptive time limitations that this court previously imposed on Section 122060 in Diop and more specifically in Chavez-Alvarez were eliminated by the Supreme Court's more recent decision in Jennings. In doing that, the district court correctly held that time alone is not determinative of the as-applied challenge. Ms. Wilson, Judge Phoebus, what do we do with the fact that in cases like Borbuck we recognize Diop and Chavez-Alvarez both had statutory holdings and constitutional holdings? That's more explicit in Diop, but Chavez-Alvarez piggybacks on it. It's a little strange that there was constitutional avoidance and still a constitutional ruling, but it looks like the court did both of them. So Jennings very specifically ruled only on statutory grounds, knocking out the courts that had gone the other way, specifically reserved the constitutional issue. So aren't the constitutional rulings in those two cases untouched? So the answer is no, and there's a lot of layers to that. The first point is that making a constitutional holding under a constitutional avoidance theory is very different than striking down a statute directly. I mean, otherwise you would not have had the remand in Jennings. That would have been completely unnecessary if those two holdings were one and the same. And we have a lot of arguments that we'll discuss about why the baseline presumption and the fundamental way that you would engage in the reasonableness analysis. I'm just going to say that Santos is not asking us to strike down the statute. He's simply saying it has to apply to him. It's unconstitutional under Chavez and Diop, both of which he's arguing survive. Jennings, because especially in Chavez, we didn't even mention constitutional avoidance. And in Jennings, that was the thrust of the reason the circuit court and the Supreme Court focused on constitutional avoidance, knowing whether or not there's a separate constitutional claim that can arise in the manner in which the statute is applied to a particular petitioner. So Jennings changes the way that this court has to engage in the reasonableness analysis. We agree. Borbott recognized that there is some holdover from the Diop case in which the court recognized that there is a constitutional limit on 1226C detention. We acknowledge that. The Constitution, the Due Process Clause, does impose a limit on 1226C. What's left open after Jennings is how – There is that limit. Yes. There can be some limit. Are you saying that it becomes a point in 1226 that the person who is detained has a constitutional due process right to be able to require the government to show why the continued detention is constitutional? And if that's true, where is that point and why is it not being shared? The point is not going to be based on time alone, and that's what changed under Jennings. Prior to the Jennings decision, this court was operating under the assumption that the reasonableness component was baked into the statute, that 1226C itself allowed the court to declare what factors it believed made detention unreasonable. Jennings changed that because now we know what Congress intended when they set out 1226C, and that Jennings establishes a baseline presumption that detention under 1226C is going to be constitutional, not just for six months, not just for one year, but for however long it takes to complete the administrative process. So that means that the way that this court has to engage in its reasonableness analysis has to deal with the Jennings decision. It doesn't have the flexibility to design its own reasonableness factors without being concerned about whether those factors are – Well, what is the number? You're conceding there's some other limitation. I think you conceded that. There can't be indefinite detention. How do we then determine what the limit is? And shouldn't it be the government's burden at some point, particularly at a hearing in which the defendant has a right and the petitioner has a right to come forward and show that in his particular case or her particular case, the risk of federal dangerousness is not such that the continued detention can be justified under the process clause? To be clear, the government does not think that there's any set time period on which 1226C would become unconstitutional. However, there is guidance in the Demore concurrence. Justice Kennedy sets out a two-step process. And so the first step of that process is to say, look and see, has detention become unreasonable based on delays by the government? And that's just the entry point for doing the analysis. That would be the standard that would prompt a further inquiry, as the court said. And only then you would inquire whether the detention, whether something about the facts and circumstances of the detention is not to facilitate deportation or protect against the risk of flight, but instead to incarcerate for some other reason. So that means that this court's never going to be able to look at the clock itself and say, okay, it's been 25 months or it's been 36 months, therefore this statute has expired. The court would have to engage in an analysis to see what's going on here. And here, especially at the time of the district court's ruling, the government's legitimate interest in continued clear. Although he had been detained at that point for 15 months, each step of the proceedings had been completed within a reasonable period of time. And thus the time that had been spent there was not indicative of any constitutional problem, but it was evidence that there was a lot of process involved. Ms. Wilson, Judge Bevis, I'd like to hear you respond to Mr. Perez's comments for the ACLU that Chavez-Alvarez made clear that this is not about blaming litigants for taking good faith positions, and yet the district court and you seem to be focused on whether the government's at fault here. But the government's fault is not what Chavez-Alvarez is focusing on. Unless there's some dilatory tactics by the alien, we just look at whether this detention has become unreasonable. And it may be that the government is not to blame, but still that's not a reason not to give the alien a hearing. What do you say in response to that? I think that's the portion of Chavez-Alvarez that's undermined by Jennings. Let me hear where Jennings undermines that. I think what it does is Jennings establishes that there is a presumption of constitutionality for the duration of the entire administrative proceedings. By putting it on the government to prove that it's the alien's fault that the case has taken this long, essentially inverts that presumption of constitutionality. Where in Jennings does Jennings say that there's this presumption of constitutionality? Jennings is a statutory case. Don't distort the statute. No, that's exactly right. So Jennings tells us what the statute means. Prior to Jennings, this court wasn't operating under the assumption that Congress mandated this detention, and it meant when it said that there would be no availability of bond hearings for the entire removal process. And then if you look at pages 20 and 21, I think continuing maybe on 22 of our brief, we're citing the Morris case, and we're citing other cases that say when you're evaluating the constitutionality of a statute in an as-applied situation, you're to presume that Congress, you know, acted constitutionally. So taking what we know about what Jennings means, what the statute means, and applying that baseline presumption, we can't then invert it and say, well, it's been some period of time. We no longer think Congress meant what it said, and we no longer think that the statute meant what it said. When you talk about Congress acting constitutionally, it seems to me you're getting into a facial challenge. The issue here isn't whether or not Congress acted constitutionally or unconstitutionally. The issue is assuming that the statute is constitutional and no one's challenging it in this case, is this particular detention so long that there's a due process interest, which entitles Mr. Santos to a hearing? That's all. He's not saying he's automatically entitled to be released. He's simply saying he's, given the length of this detention, entitled to have the end of the Fifth Amendment due process cost, entitled to have the government come forward. That's a separate burden of proof issue I understand, but let's assume that the burden falls on the government. If this were a facial challenge, I think your argument would have some force, but this is an as-applied challenge. I think you still presume the constitutionality of a statute in an as-applied situation. You still assume that Congress meant what it said when it said, we will detain this person. They will not be eligible for bond however long it takes for the administrative removal process. What if the administrative removal process, because of not fault necessarily, maybe we're getting to the point, but just the pure bureaucratic inefficiency and taking inefficiencies out of existence, the reality on the ground, no one's fault, but it takes the government, let's say, 25 years to process someone once they're put into removal hearings, once the notice of appearance is served. Let's just say it takes 25 years to complete the process. Let's say that it's served on someone who has been living in this country for 25 years, they overstayed their visa, they're carried here illegally, and they're removable. They've paid their taxes, and I know this is not Ms. DeSantis, they're here in those 25 years, they've paid their taxes, they've maintained their business, where they've employed other people, and I had a case like this not too long ago. But, yeah, they're removable. But now it's going to take the government 25 years during which time they're going to get detention. That can't possibly be right. Five minutes. It can't be mere government moving along in that, of course, and trying to keep somebody detained and better along. I think at some point the court could find that the detention is so long that the failure to put proper resources to the timely completion of removal proceedings, that that would somehow undermine the constitutionality of continued detention. But that's a very fact-specific inquiry that would require far more of a record than we have here. Well, that's the point. He hasn't had a chance to make a record. He wants the opportunity to establish he's not at risk of flight, he's not at any risk. And so the government's come forward and show why, in his case, it's okay under the Fifth Amendment to continue to detain him. He's asking for that opportunity. There's no record because the guy's been detained, only because of the fact that the removal proceedings have begun and he's solved an appeal. There's a difference between making a record in the immigration proceedings, which Congress has said is not available to this category of individuals. Congress has made a determination that this statute requires detention throughout this proceeding without an individualized record. I'm getting circular now. This is Alice down the rabbit hole. Assuming all of that is true, the issue then becomes how long can that detention last without an individualized determination, that in this particular case, the continued detention is reasonable. That's the only issue here. So I get that Congress has made a determination that this class of folks should be detained, but they didn't say detained added to some items. In fact, Zebaitis, I guess the way it says, that can't possibly be even if that's the 1231A case. Nevertheless, there are restrictions, and I think it's continued as much, there are restrictions under the Fifth Amendment to the length of detention. We're going in circles. So we begin with we assume that the statute meant what it said, that Congress meant what they said in the statute. And then from there, you look at whether or not the proceedings are proceeding at a reasonable pace, given the multiple layers of procedural protections that are included in the administrative process. So here the length of time, the 15 months that we were at, at the time of the district court's decision, is reflective of the considerable process, not on any sort of administrative or bureaucratic delays. What do you mean by process but not the administrative delay? Isn't the administrative delay because of the process? Well, I'm suggesting that nothing in this record at the time of the district court's decision reflected that anything had gone other than exactly as Congress intended. It would be very strange to presume the constitutionality of a statute, but then say, look, everything worked exactly as Congress intended. All of these multiple checks and balances, the individual took advantage of all of the multiple layers of review, but somehow that made the detention unconstitutional. Two minutes. Our point is that the layers of the procedural protections cannot themselves create a substantive due process violation, simply because they're working exactly as they were designed. No matter how long they take, let's go back to my 25-year analogy. In the first and oldest paid division, no record whatsoever, paid taxes, not only employed but had a division where they employed others, that they oversee the visa, the removal. So you're saying that if things are moving along at a pace which is routine for detention of folks who oversee the visa, that it had taken 25 years, that that's okay because Congress intended that they should be detained. When things are moving along, the person got detained tentatively or because to soften them, it's just the way things are. I don't think that there will ever be a record that suggests that 25 years is a matter of course. Here the record shows that it took six months to get through the immigration court proceedings. It took another six months to deal with a very complicated question from the board. All that was happening at the time the district court ruled was a temporary stay of removal from this court while there was further administrative process of the stay motion. It's not hypothetical. Assume the 25 years. It's a hypothetical. Hypothetical means it's not a real situation. It's a theoretical situation. Answer that. I think I have, Your Honor. I don't think, I mean, you would have to go back and you'd have to look at the record. You'd have to look about the causes for the delay. But in ordinary course, 25 years is going to be far outside of the norm or the expected time to process one of these cases. Let's assume it's not, though. I'm trying to be the principal here. Let's assume it's not far outside of it. Let's make it 10 years. And if 25 years is extreme, let's make it 10 years. Or five years. Because we're getting to the point where five years is not that extreme. Is five years okay? I think you'd have to look at the reason for the way that the case moved. I mean, that's a very highly specific fact analysis. This court has repeatedly used that language in describing the way that this should happen. And the point here is just far more narrow. The point here is whether or not we have to presume that detention becomes unconstitutional simply because it passed this one-year mark. And it hasn't here. Here we had done everything in our ability to move the case along, to make sure that the outcome of these proceedings were fair. And that alone can't make detention unconstitutional. Well, the argument between absence of detention, let's take presumption out of it. So he's not saying, I'm going to point now, I presume my detention is unconstitutional. Rather he's saying, I'm going to point now, where absent some showing it's become unreasonable. Maybe it's not unreasonable. The government can come forward and show that I'm misapplied or I'm dangerous. It's not unreasonable. I'll go back and eat my processed food in my cell and keep quiet. It's a presumption necessary to the argument. I'm not sure what presumption you mean. We've used the word presumption. We're saying that he's making the argument that now his continued detention is unconstitutional. I'm saying take the presumption out of it, because you don't need the presumption to work to get to the point where the government should have some kind of showing so that his continued detention is reasonable. We're not presuming it's unreasonable, but we're at a point where the government should come forward and show why it's reasonable. I think that's baked into the way that the constitutional analysis we're suggesting would go, that you would at the first step say, okay, are we at a point where detention is unreasonable, where it has reached a length that is beyond what would be expected given the stages of proceedings? Then after that we look and we inquire into what are the reasons that it's taken this long, and are there any reasons to suggest that the government hasn't acted appropriately in these cases? So that's what's back to specific. Ms. Wilson, Judge Bevis, my concern here is that this blame requirement that you seem to be reading in, it's not required under Matthews v. Eldridge, Goldberg v. Kelly, the general due process cases. I mean, yes, pre-deprivation, you can deprive someone for a short period of time until that person should get a hearing, but you seem to be taking the position that this can just take a long period of time with no hearing, not let's give the government a reasonable period of time before we get to the hearing. And I guess Judge McKee and I are both having the problem that Diop and Chavez-Alvarez and none of these precedents requires blame on the government, and Jennings specifically avoided opining on what the Constitution requires in that respect. And so it might be the case that bad faith or bad conduct from the government would exacerbate things or speed them up, but none of these cases appears to require some kind of government dilatory conduct. So where does that come from? It comes from the Kennedy concurrence in Des Moines, Your Honor. If you look there, Kennedy says that were there to be an unreasonable delay by the government in pursuing and completing the proceedings, then it would become necessary to inquire into the reasons for that. Okay. There's one justice concurrence. That's right. That's right. That's the only justice, the only Supreme Court decision we have anywhere on this statute that suggested that there's an end point. So I think that if we're looking at what is the end point, that's the place we should begin. So, yes, I think that that's right. And so if you apply that analysis here, I think we've fully covered why it is that it would be clear. I think it's very important to note in this case there is no question of removability here. This controlled substance offense, this charge, has rendered him not to be a lawful permanent resident. There's not going to be on remand any reexamination of that. The only issue is going to be the availability of a purely discretionary form of relief from removal. If you look on page 28 of our brief, that we cite Jay and Yang that describe it as a matter of grace or a pardon. And so here we have basically an election by the petitioner to remain in custody to fight for that discretionary relief. And that decision would make Section 1226B unconstitutional. Okay. I don't know if my colleagues want to talk more about this. I'll wait. But I would like at some point to hear about the bond hearing. And you resist the idea that the burden is on the government, let alone that it be on the government by clear and convincing evidence. Yeah, I appreciate that. Oh, I'm sorry. I didn't mean to interrupt you. So I don't know if they want to say anything, ask anything further on this. You have to say anything further before we get to what the hearing would look like if there is a hearing. I'm content to move to that issue. Yeah, I'm fine. Even if the court were to find that Section 1226B can't be applied to the petitioner, the court really should go no further than the bond remedy that Congress already designed for non-criminal aliens under Section 1226A. So unlike this court's prior statutory analysis, where it felt that it could, you know, determine the contours of that hearing, here we are much more confined to having to select a remedy that best respects Congress's intent and preserves the statute as a whole. And here we have a very clear statement from Congress on what its will would be. If Section 1226C were stripped from the statute, Section 1226A would remain. In Jennings, the Supreme Court made clear that 1226A does not require the government to bear the burden of proof and certainly would not require it by a clear and convincing evidence standard. And this court in Borlaugt affirmed the constitutionality of that provision even at, you know, a 15-month mark, which is exactly the same length of detention that we had at the time the district court rendered its decision in this case. So there's really no basis for departing from 1226A's standard, given that it represents an adequate remedy under, you know, the Carlson case, the Flores case. And even the court in Zabida said, you know, the alien would have to come forward with evidence that they're not going to be removed before they would be entitled to release. And that's far more likely to be something within the province of the government's knowledge base than the alien. So it's clear that there's no requirement that the government bear the burden of proof constitutionally. What do we make of Guerrero-Sanchez? I grant you've got that footnote, the government is seeking cert on this. But as long as Guerrero-Sanchez is on the books in this circuit, why shouldn't we analogize the 1226 hearing to the 1231 one and put the burden on the government by clear and convincing evidence? I mean, Diop put the burden on the government. I think Chavez-Alvarez assumed it was on the government. So I'm not sure as a matter of circuit precedent we can avoid putting on you. And if we're going to put it on you, why isn't it by clear and convincing the way that Guerrero-Sanchez said, Addington, Cooper, and Santosky said was appropriate when you've got a heightened standard. And Salerno, too, clear and convincing evidence. I don't think Diop or Chavez-Alvarez dictate the results here. First, to be clear, neither one of them say clear and convincing evidence. They don't say clear and convincing. They do state the burden is on the government. That's right. They do. But I don't think this court is bound here because I think now you have to re-examine the remedy now that we're addressing a different violation. There you are addressing a statutory violation where you had concluded that there is a statutory entitlement to the bond hearing, and then you were directing what standard would be required by statute. Here we have a completely different question and a completely different issue to remedy. And you are more obligated now to stay true to the statute and to do the least damage in striking down whatever portion you think cannot be constitutionally applied to this particular alien. So here you would just undertake a completely different analysis than what you did in Diop or Chavez-Alvarez. But your question about Guerrero-Sanchez is a good one. There I think there's a couple of really important points. First, as I've said, that's a statutory interpretation question, not one that's a straight-up constitutional striking of the statute. So I don't think you would engage in the same analysis. There's also a different statute with a different animating constitutional concern. There the court was dealing with the question of is this detention indefinite. And it's very clear that Jennings speaks to an answer to that and says 12-2060 is not indefinite detention. 12-2060 has a very clear endpoint, so we're not dealing with the same constitutional issue to remedy. Okay. Let's say you could distinguish Guerrero on that ground. The other analogs we have involving these heightened liberty interests also seem to apply clear and convincing. Do you have another domain in which we apply preponderance of the evidence to these kinds of liberty determinations? I mean, Atkins, Salerno, Cooper, Santosky, these are things that require more than money. So as Ms. Huffstetter said, why is it that this should be the unique domain where we apply preponderance? I think the court's already recognized that this is a unique domain in BORBOT. The BORBOT decision could not come out that way if the court had not already recognized that immigration proceedings are unique. And the Supreme Court's considerable lengthy precedent on this supports that because never in the history of any of these challenges to the immigration removal or immigration detention statutes has the Supreme Court ever required the government to bear the burden of proof. As we mentioned, Carlson and Flores upheld detention based on a categorical assessment, not even an individualized assessment. Zavidoff, again, placed the burden on the government. And if you look to the statute itself in 12-2016, the only exception that it recognizes for mandatory detention for witness protection reasons still requires the alien to satisfy the attorney general of their worthiness for release. So I think it's very clear that we have always treated immigration detention that way, and the BORBOT decision confirms that this court agrees. So even if the court were to grant this petition, we think Petitioner would be entitled to the same process that Congress made available to the non-criminal aliens under its catch-all provision in 12-26A. In the event that he is denied bond under that statute and wants to raise a new, different constitutional challenge, this time to the adequacy of 12-26A, he can do that in a subsequent challenge. But it makes little sense for this court to effectively invalidate both 12-26C and 12-26A in this type of challenge. So we ask that you would affirm the district court's denial here. Okay. Thank you very much, Ms. Wilson. Ms. Hoffman, you have, I think, a few minutes. Yes, Your Honor. Thank you. I think I have three points. One is about the record in this case. The second about the Supreme Court's precedence. And the third is about the garden of proof. Your Honor, the record in this case establishes that Mr. Germont-Sanchez's detention is the most important and compelling factor. Despite what my colleague just said, the record was clear before the district court that the government's behavior was unreasonable in this case. The immigration judge had issued a decision that was plainly contrary to this court's precedence in the area of the aggravated felony determination that he was making. The BIA had very summarily affirmed that decision. But he had not had the opportunity for judicial review yet before this court. And the district court erred by assuming that the government's arguments had been reasonable without actually scrutinizing them to determine whether that was the case. So this is a case where the government caused the delay in the proceedings, and that makes the detention unreasonable. But it also is a case that shows why that has never been the rule in this circuit. A rule that requires a finding of bad faith by the government or a necessity of an appeal versus just a bona fide appeal puts too much onus on district courts to adjudicate the merits of the underlying removal proceedings. I don't know how you separate a necessary appeal from a good faith appeal. An appeal, even in a death case, is not necessary. The person can just willingly walk into the death chamber. So I'm not sure what is meant by a necessary appeal. It's not necessary. So the person wants to reassert their claim to liberty. It's not necessary to do that. They can take advantage of the government's health care and free meals and rot in prison if they want. A necessary appeal doesn't help me. I think it would have been a better way to phrase it to say a successful appeal, that the noncitizen should not need to have one in order to show that the fact of filing appeals is a reasonable and bona fide litigation strategy in this case. Because it may turn out, like it did in this case, that the noncitizen does not succeed on an appeal until he seeks judicial review before this court. And it cannot be the case that no matter what the content of the decision below, there is no constitutional violation until this court has granted or remanded a petition for review. So as long as there's no evidence, which there was none in the record here, that the noncitizen is litigating in bad faith, is pursuing frivolous appeals, and this is what Chavez-Alvarez and Leslie held, that as long as the appeal raises a bona fide issue, the court should consider the time unreasonable where it stretches beyond, you know, a period where it's beyond that six to one year period and where it looks like it's going to continue significantly longer. And that was the case here. The district court issued its decision when Mr. Herman Santos had been detained for 15 months. It was clear the petition for review was still being briefed before this court, so it was clear that detention would last significantly longer. And so all the factors in Chavez-Alvarez and DF were met, and the court should have granted relief based on that record. Okay. Could I respond to Ms. Wilson's points? One of her stronger points, I thought, was, you know, DeMoore says, you know, the court has long held that the government may constitutionally detain deportable aliens during the limited period necessary for the removal proceedings. Now, you would stress the limited part of that, but I think she's stressing the part that's necessary for the removal proceedings. And if the government is moving with all proper expedition, then isn't it within that, DeMoore seems to bless these kinds of categorical, you know, it doesn't have to be here at all. So why isn't it associated with DeMoore as we can? Your Honor, DeMoore emphasized not only that it is a period necessary for removal proceedings, but it's a brief period necessary for removal proceedings. And DeMoore had facts in court, and DeMoore had facts in front of it, which have now been shown not to be accurate, that this detention would typically be very brief. And I think in many cases it is very brief. But when it's become two-and-a-half years, the DeMoore court never considered detention of two-and-a-half years when it held that the statute was constitutional against the facial challenge, which, of course, would require, in order to invalidate the statute, the plaintiffs would have had to show that the statute was never constitutional. They couldn't have ever. I'll grant that. I'll grant that two-and-a-half years is well beyond what they were considering. The numbers before them, we can't disregard the precedent, but we can read it in light of it. But what about Ms. Wilson's argument that, look, if we're going to grant a hearing, this is not a context for putting a burden on the government by clear and convincing evidence? Your Honor, the statutory of the structure is what creates the situation where the government must bear the burden because, as Congress intended, no hearing can occur until there's already been a constitutional violation found, and that's why this situation is more similar to the cases I mentioned earlier, including Addington. And Ms. Wilson mentioned Borbeau, which is a case about 1226A, but I'll note that Borbeau drew this exact distinction. Borbeau said that 1226A is very different because the individual had a bond hearing at the outset. That individual had some process from the beginning, had a chance. And someone who's detained under 1226A can move for another bond hearing at any time if they can show changed circumstances. On the other hand, Mr. Jaramon-Santos and, as Borbeau held, other people who've been detained for a very long time under 1226C have never had any process whatsoever, so they're now in a position where their liberty interest outweighs the government interest in detention based on presumption. And that's why this isn't a statutory remedy like 1226A. It's a constitutional remedy, and so the procedural safeguard needs to be sufficiently stringent to avoid against erroneous deprivation. I'd also note on that same point, Your Honor, that in terms of the analogy to Guerrero-Sanchez, if anything, where there's actually a constitutional violation rather than a holding that imposes a bond hearing through an exercise of constitutional avoidance, the burden of proof on the government should be higher in the actual constitutional violation context than in the avoidance context. Because, again, here there's already been a finding that the liberty interest outweighs the government interest. And finally, just in terms of the statutory context, Guerrero-Sanchez, although some people detained under 1231 are those stateless people that the court in Vidas discussed, Guerrero-Sanchez actually was primarily about people who are in withholding only removal proceedings. So while they're detained under that statute, like Mr. Germán Santos, they are detained because they are litigating their removal, not because they can never be removed. So it really is quite analogous. And Guerrero-Sanchez stated exactly what Chavez-Alvarez and Leslie prior to it had stated about 1226C cases, which is that when a noncitizen is litigating a bona fide claim and that claim takes a long time, at some point there is a constitutional need for a bond hearing, and that's a bond hearing where now, after all that time has passed, the government needs to bear the burden. The way of your time, maybe we can just take a moment or two, in the long run, to address the issue of the one, burden of proof, and two, the question of proof. I'm sorry, Your Honor. It's hard to hear the end of the question. I'm wondering if you could address, just in a moment or two, the burden of proof issue as well as the quantum of proof issue. Yes, Your Honor. I think the burden of proof is what's decided in DIOP, and so the court can just easily reaffirm that holding. The quantum of proof issue comes from Guerrero-Sanchez, as I was just mentioning, as well as from this Court's other cases, or rather the Supreme Court's other cases, that holds that where the bond hearing or the procedural safeguard is the critical piece that's going to make something that would be unconstitutional, like civil confinement, like prolonged detention without a hearing. The procedural safeguard is the thing that's going to convert the unconstitutional deprivation into a constitutional deprivation. In those contexts, the Supreme Court has consistently held that the Supreme Court, that the government should bear the burden of proof by clear and convincing evidence. So this is an analogous context as well. Thank you. Let my colleagues have questions. I'll take a better view on the advice. You look so bored, I want to start reading this last letter. Yes, Your Honor. I want to thank you, and when you return to your office, if you could pass on the Court's thanks and appreciation to whomever has to make these decisions at your office. We couldn't do these notifications but for the willingness of members of the Board to step forward and take these cases for a bonus, so we greatly appreciate that. I appreciate it as well, and I will pass that on, Your Honor. Thank you. Mr. Perez and Ms. Wilson, we also greatly appreciate your time back with you, and thank you for your helpful audience.